## CHESAPEAKE & OHIO RAILWAY COMPANY v. PUBLIC SERVICE COMMISSION.

1. EMINENT DOMAIN—HIGHWAYS—RAILROADS.

   Private property, including that of a railroad right-of-way, may not be taken for public highway use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law (Const 1908, art 13, § 1).

2. SAME—RAILROADS—COMPENSATION FOR HIGHWAY CROSSING EXPENSE.

   A railroad company is entitled to compensation for structural changes made necessary in the condemnation for right-of-way for public highway across the railroad and is also entitled to compensation for any direct expense made necessary by the fact of the opening (Const 1908, art 13, § 1).

REFERENCES FOR POINTS IN HEADNOTES
[1] 18 Am Jur, Eminent Domain § 34 et seq.
[2] 18 Am Jur, Eminent Domain § 101.

3. Statutes—Intent—Inference—Amendment.

It is not a necessary inference that a statute did not confer power upon the State highway commissioner to make agreements with a railroad as to the expense involved when a highway is laid across a railroad right-of-way merely because an amendment to the statute was enacted by the legislature but vetoed by the governor, since it is just as logical to conclude the amendment was adopted so as to eliminate any doubt of legislative intent (CL 1948, § 469.8; 1955 HB 248).

4. Highways and Streets—Contracts—Railroad Crossing Warning Signals—Expenses.

A contract between the State highway department and railroad company whereby the department undertook the entire expense of installation and operation of flashing light signals at new crossing of railroad when highway was constructed across railroad used for 2 weekly round trips for 1 train by company, was within the power of the parties thereto to execute, the statute requiring equal division of costs for such installations being applicable to existing crossings and not to new crossings (Const 1908, art 13, § 1; CL 1948, §§ 469.2, 469.8).

Appeal from Ingham; Coash (Louis E.), J. Submitted June 12, 1956. (Docket No. 51, Calendar No. 46,812.) Decided December 6, 1956. Rehearing denied May 17, 1957.

Bill by the Chesapeake & Ohio Railway Company, a Virginia corporation, against Michigan Public Service Commission and Michigan State Highway Department to review order of former disapproving agreement that highway department bear cost of traffic signals on relocated highway and directing cost and expense borne by department and railroad. Bill dismissed. Plaintiff appeals. Reversed and remanded.

*Edward H. Goodman* and *Robert B. Seeley* (*James W. Williams,* of counsel), for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Joseph A. Sullivan,*

*Robert A. Derengoski* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

*Amicus Curiae: H. Victor Spike.*

KELLY, J. This appeal calls for the interpretation and construction of PA 1931, No 336, §§ 2 and 8,* and more particularly the Michigan highway commissioner's right and authority to bind the State to pay for installation and operating expenses of a flasher light at a highway-railroad crossing.

The highway department sought permission to construct a highway across the tracks of the Chesapeake & Ohio Railway Company about 1/2 mile south of Holland, as part of a plan to relocate US-31.

In May, 1952, a meeting was held at the contemplated crossing by representatives of the highway department, the railroad, and the Michigan public service commission, which resulted in the following report to the commission by its railroad inspector:

"Through discussion of this matter, it was discovered that rail traffic consists of a local freight train operating a round trip on Tuesdays and Fridays at a time card permitted speed of 20 miles per hour.

"Because of the unrestricted site [sight?] distance at the proposed location, together with the intermittent and small amount of rail traffic, it was agreed by those present that the safety of the traveling public may well be served with the establishment of standard reflectorized cross-buck signs, 'One-Track' signs and advance warning signs."

In August of 1952 the highway department advised the plaintiff that the plans for the erection of crossbuck and advance warning signs had to be abandoned because the bureau of public roads (an instrumen-

---

* CL 1948, §§ 469.2 and 469.8 (Stat Ann §§ 22.762 and 22.768).

tality of the United States of America which approves or disapproves the allocation of Federal funds for State highway projects) requested the installation of flashing light signals. A written agreement was prepared by the highway department and signed by said department and plaintiff. Section 6 of such agreement reads:

"Section 6: It is understood that the crossing protection for the crossing is to consist of standard flashing light signals to be furnished and installed by the railroad, including all material and labor, and the cost of which will be at the expense of the highway department. After the completion of the crossing protection, the maintenance, operation, and renewal will be performed by the railroad at the sole cost and expense of the highway department.

"Advance warning signs shall be furnished, installed, maintained, and renewed by the highway department at its sole cost and expense.

"In the event it is determined in the future by proper authorities that additional crossing protection is warranted, said additional crossing protection will be installed by the railroad at the sole cost and expense of the highway department and that, after the completion of said additional crossing protection, the maintenance, renewal, and operation costs will also be at the sole cost and expense of the highway department."

This written agreement was submitted to and approved by the Michigan public service commission. On April 29, 1954, the attorney general of the State of Michigan disapproved the provisions of section 6, above quoted, because said section "purports to bind the highway department contrary to CL 1948, § 469.8"

PA 1931, No 336, § 2, provides:

"The full cost of constructing a new highway over an existing railroad, or of a new railroad track or

tracks over an existing highway, shall be borne by the party requesting such crossing. Thereafter the terms of this act shall apply to such new crossing. In respect of State trunk line or county highways at grade, the plans for such crossing shall be approved by both railroad and highway authorities. In the event of failure to agree on the part of the railroad authorities, the Michigan public utilities commission shall settle the points of disagreement by the terms of its order. The relocation of an existing crossing or the establishment of a new crossing at which the adjacent public highway grade crossing is completely and legally abandoned, shall be constructed and the cost borne in the same manner as in the case of a new crossing." CL 1948, § 469.2 (Stat Ann § 22.-762).

Section 8 of the same act provides:

"When in the discretion of the Michigan public utilities commission the safety of the public shall hereafter require that some protection device or improvement in existing devices be provided at a railway crossing to warn of the approach of trains about to cross the highway, it shall be the duty of the Michigan public utilities commission and it is hereby empowered to order the railway authorities owning the tracks of such crossings to provide protection of a flashing light. * * * The cost of all flashing light installations and alterations or relocations of same shall be borne equally by the railway and highway authorities, and thereafter they shall be maintained by the railway authorities at their own expense except that the highway authorities shall pay $10 per month to the railroad authorities for each crossing protected by flash light signals." CL 1948, § 469.8 (Stat Ann § 22.768).

The commission withdrew its previous approval of the agreement between plaintiff and the highway department whereby the highway department would bear all the costs of the installation of the flasher lights, and held instead that costs would have to

be borne equally between plaintiff and the highway department in accordance with the provisions of PA 1931, No 336, § 8.

In approving the commission's decision in this regard and dismissing plaintiff's bill of complaint, the circuit court of Ingham county stated:

"This court is of the opinion that the commission was correct in their finding that section 2 of the act pertains solely to the construction of the crossing, and that section 8 pertains to the installation of the flasher-light signals. This section provides that the cost of *all* flasher-light installations shall be paid for equally by the railway and highway authorities. This section of the act does not exempt any railroad crossings, and does not limit the installations to crossings in existence at the time the act was passed."

Appellant states that the interpretation of PA 1931, No 336, has received a construction, which plaintiff now calls for this Court to adopt, which has been the interpretation of all the public officials having anything to do with the administration of this act since the date of its enactment, including the State highway department under all administrations, and the Michigan public service commission, as well as boards of county road commissioners and municipal highway authorities throughout the State, with the full approval of the attorney general.

Appellant then calls attention to the decision in *People, ex rel. Attorney General,* v. *Michigan Central R. Co.,* 145 Mich 140, 150, where this Court said:

"For the purpose of aiding in the construction of the statute the court may revert to the history of the times and ascertain by such records as courts are authorized generally to take judicial notice of what construction has been adopted by other departments of government. It appears from these that

to the knowledge of the executive department, of the legislative and legal departments of the State, and with the full approval of the latter, the defendant has for half a century or more reported for taxation only such capital and loans as were employed in constructing a railroad within the State. * *. *

"We are of the opinion that the practical construction of the executive and legislative branches of government so long continued should be held decisive of the legislative intent, and upon this question assent to the reasoning of Mr. Justice GRANT."

Mr. Justice GRANT said (p 166):

"If, however, there were any doubt about the construction to be placed upon this amendment, and this at least must be conceded, the parties to the contract have by a uniform course of conduct for nearly 50 years given it a construction. Where parties by such a uniform course of conduct for a long time have given a contract a particular construction, that construction will be adopted by the courts."

Appellees in their brief state:

"Perhaps similar agreements to exhibit 4 attached to plaintiff's bill of complaint were made for years prior to 1931. Maybe the parties continued to make agreements subsequent to 1931 notwithstanding the statutory inhibition against such agreements. But no public official nor group of public officials can enter into contracts, sanction contracts, or ratify contracts which bind the State to do something in violation of the law. Those provisions of the contract are void and unenforceable which contravene a statute."

If no agreement had been entered into between the highway department and the railway company, condemnation proceedings would have been necessary.

Article 13, § 1, of the Constitution of Michigan (1908) provides:

"Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

In *Village of Plymouth* v. *Pere Marquette R. Co.,* 139 Mich 347, 349, this Court said:

"It is undoubted that in case of a condemnation of a right-of-way across a railroad the company is entitled to compensation for structural changes made necessary, and also for any direct expense made necessary by the fact of the street opening, as in maintaining a flagman, or gates, or cattle guards. *City of Grand Rapids* v. *Grand Rapids & Indiana R. Co.,* 58 Mich 641; *Commissioners of Parks & Boulevards of Detroit* v. *Chicago, Detroit & Canada Grand Trunk Junction R. Co.,* 91 Mich 291; *Commissioners of Parks & Boulevards of Detroit* v. *Michigan Central R. Co.,* 90 Mich 385; *City of Grand Rapids* v. *Bennett,* 106 Mich 528; *Chicago & Grand Trunk R. Co.* v. *Hough,* 61 Mich 507."

The Michigan legislature, at its 1955 session, shortly after the release of the attorney general's opinion, above referred to, enacted house bill No 248 authorizing the highway commissioner to enter into agreements such as herein presented. This enactment of the legislature was vetoed by the governor.

Appellees state in their brief:

"Section 8 of the statute was amended by house bill No 248 to permit agreements of the kind being considered in the case at bar. *A fortiori* if agreements on the cost of installation and maintenance of flasher lights were permissible under present law our law makers would not have spent long hours on the amendment and passage thereof."

It is just as logical to conclude that the 1955 legislature adopted the amendment so as to eliminate any

doubt of legislative intent caused by the attorney general's opinion hereinbefore mentioned.

The provisions of section 8 apply to the installation of flashing lights on existing crossings, but do not apply to new or relocated crossings. There is no doubt that the crossing 1/2 mile south of Holland was a new or relocated crossing. The highway department had a right to enter into an agreement with the railway company, and said contract was fully executed and is binding upon the highway department and the railway company.

The order of the circuit court for the county of Ingham, in chancery, dismissing the plaintiff's bill of complaint is vacated and set aside, and this cause is remanded to the trial court for further proceedings.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, BOYLES, CARR, and BLACK, JJ., concurred.