HURON PORTLAND CEMENT COMPANY *v.* PUBLIC SERVICE
COMMISSION.

1. PUBLIC SERVICE COMMISSIONS—ELECTRICITY—EXTENSION OF SERV-
ICE—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY.

The statute empowering the public service commission to order
an electric supply utility to make reasonable extensions of
service does not apply, where the company has no power lines
into the city in which the would-be direct purchaser is located
and the utility has not requested a certificate of public con-
venience and necessity to the area (CL 1948, § 460.551 *et seq.*).

2. SAME—EXTENSION OF SERVICE.

A governmental agency does not possess the power to compel a
public utility to extend its service at its own expense into a
territory which it does not and has never undertaken to serve.

3. SAME—REGULATION—ECONOMIC WISDOM.

The economic wisdom, or lack of it, in legislation is not the con-
cern of courts in passing upon legislation regulating public
utilities, where the question before the court is whether or not
the regulatory body has certain powers.

4. SAME—POWERS—STATUTES.

The public service commission is an administrative body created
by statute and the warrant for the exercise of all its power
and authority must be found in statutory enactments.

5. SAME—JURISDICTION—SPECIFIC POWERS—STATUTES.

The statute describing the statutory jurisdiction of the public
service commission is construed as constituting no grant of
specific powers in the absence of lack of standards therein for
their exercise and in the presence of other statutes granting
specific powers, which were enacted both before and after the
statute creating the commission (CL 1948, § 460.6).

---

REFERENCES FOR POINTS IN HEADNOTES .
[1, 2] 43 Am Jur, Public Utilities and Services §§ 47, 48.
[3] 50 Am Jur, Statutes § 380.
[4, 5] 43 Am Jur, Public Utilities and Services § 193.
[6] 18 Am Jur, Electricity § 4.

6. Same—Certificate of Public Convenience and Necessity—
   Electricity.
   The requirement that an electric utility company obtain a certifi-
   cate of public convenience and necessity is designed to enable
   the public service commission to prevent needless multiplication
   of companies serving the same territory and thus keeping the
   cost of capital as low as conditions of the investment market
   permit (CL 1948, § 460.502).

7. Certiorari—Questions of Fact.
   The Supreme Court will not pass upon controverted issues of
   fact when reviewing case on certiorari.

Appeal from Michigan Public Service Commission.
Submitted October 18, 1957. (Docket No. 43, Calen-
dar No. 47,171.) Decided March 4, 1958.

Petition by Huron Portland Cement Company, a
Michigan corporation, to the Michigan Public Serv-
ice Commission for an order directing Consumers
Power Company, a Maine corporation, to furnish
electric service. From order denying petition, plain-
tiff appeals by certiorari naming commission as de-
fendant. Consumers Power Company, upon its own
motion, is added a party defendant. Affirmed.

*Snyder & Loomis,* for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Samuel
J. Torina,* Solicitor General, *Robert A. Derengoski*
and *John E. Tormey,* Assistants Attorney General,
for defendant Michigan Public Service Commission.

*A. H. Aymond, Jr.,* and *H. P. Graves,* for defend-
ant Consumers Power Company.

Amicus Curiae:

Alpena Power Company, by *John R. Watkins*
(*Robert C. Winter* and *Wilhelmina Boersma,* of
counsel).

Smith, J. The problem presented concerns the
furnishing of electric service to the appellant. This

is an appeal in the nature of certiorari from an order of the Michigan public service commission dated January 4, 1957, "but only insofar as it denies in paragraph 4 of the order section thereof the petition of Huron Portland Cement Company for direct electric service from Consumers Power Company." Paragraph 4, above referred to, states as follows:

"4. The petition of Huron Portland Cement Company requesting that this commission order consumers Power Company to render direct electric service to it from its 140 KV transmission line running from Mio, Michigan to the plant of the Presque Isle Corporation, is hereby denied."

It is the position of the commission, in respect of such denial, that "the provisions of PA 1929, No 69,* are controlling in this matter and under section 2 of said act it is necessary that Consumers Power Company obtain from this commission a certificate that public convenience and necessity will require the rendering of this service."

It is the claim of appellant, on the other hand, in its application for leave to appeal, that:

"B. The Michigan public service commission erred in determining that it lacked statutory authority to order Consumers Power Company to serve directly from its transmission line the Huron Portland Cement Company under the facts and circumstances contained in the record:

"(1) By giving no consideration to the powers vested in it by the act creating the commission which is PA 1939, No 3 (CL 1948 and CLS 1956, § 460.1 *et seq.* [Stat Ann 1955 Cum Supp § 22.13(1) *et seq.*]), which grants to the Michigan public service commission broad discretionary powers to regulate electric light and power companies;

"(2) By giving no consideration to the powers vested in it by the provisions of PA 1909, No 106

_____

* CL 1948, § 460.501 *et seq.* (Stat Ann § 22.141 *et seq.*).—Reporter.

(CL 1948, § 460.551 *et seq.* [Stat Ann § 22.151 *et seq.*]) which is commonly referred to as the 'transmission act' which provides in section 6 that the commission shall have power to order service to be rendered from a transmission line in any case in which *it will be reasonable for such service to be ordered.*

"C. The Michigan public service commission erred in determining that the provisions of PA 1929, No 69 (CL 1948, § 460.501 *et seq.* [Stat Ann § 22.141 *et seq.*]) were exclusively controlling in this case."

Upon the above record, in part, and upon the representation to us "that time was of the essence in this case," we granted application for leave to appeal. Appellant raises 2 questions and 2 only:

"(1) Did the Michigan public service commission lack statutory authority to order direct electric service from Consumers Power Company to appellant Huron Portland Cement Company?"

And—

"(2) Was it necessary that Consumers Power Company petition the Michigan public service commission for the granting of a certificate of convenience and necessity to render direct electric service to appellant before the commission could order Consumers Power Company to render direct electric service to appellant?"

We will confine our summation of the facts to the issues thus presented on this appeal. By way of background, however, we should point out that the commission had before it 3 matters involving electric service in and near Alpena, Michigan. These matters were to some degree interrelated and the commission, hence, issued a single opinion and order thereon. Huron appealed, as above noted, from that part of the opinion and order which denied its petition for direct electric service from Consumers.

The situation presented to the commission was this: Appellant Huron Portland Cement Company (Huron), a Michigan corporation, engaged in the business of manufacturing and selling cement, conducted a portion of its operations in the city of Alpena. It was in need of large additional amounts of electric power. The local electric power company is the Alpena Power Company (Alpena Power), a Michigan corporation with a service area comprising the city of Alpena and certain nearby areas.* But Alpena Power was not the only electric utility company in the general area. Consumers Power Company (Consumers) furnished large industrial power service within Alpena Power's service area to the Presque Isle Corporation pursuant to a contract therefor which had been approved by commission order. This order also granted Consumers a certificate of convenience and necessity to construct, maintain, and operate a 140 KV transmission line from Mio, Michigan to the plant of the Presque Isle Corporation. Such transmission line does not enter or pass through the city of Alpena.

Huron wished to purchase its power requirements directly from Consumers. Accordingly it petitioned the commission to order Consumers to supply the service. This the commission, by order dated January 4, 1957, refused to do. Other necessary facts will appear in our discussion of the issues of law presented.

The appellant asserts (which the commission denies) that the commission has authority to order

---

* It appears from the appendix of appellee, Michigan public service commission (and that of *amicus curiae*, Alpena Power Company) that Consumers and Alpena Power executed, under date of January 21, 1957, an amendment to their service contract of July 18, 1955, whereby Consumers contracted to sell additional electricity to Alpena Power. This amendment, the commission states in its brief, "meets the requirement of the commission order that Alpena Power acquire a greater volume of electricity before inaugurating large industrial service."

Consumers to render this service. The question posed is a broad one, going to the very roots of private enterprise. This is not a case where a utility, already servicing a city, arbitrarily refuses to take on a new (or expanded) burden, for Consumers has never supplied electricity to either the city of Alpena or the Alpena area generally. Furthermore, it has stated without ambiguity that it does not profess to service the Alpena area. No other conclusion can be reached from that portion of the record which purports to state the position of Consumers Power Company in this matter:

"Now, if the Commission please, these applications place Consumers Power Company in a difficult position, because if these industries were located in our service area, we would be pleased to serve these customers with their requirements for electric energy. We well appreciate their desire for electric service on the most advantageous terms to them.

"We are also mindful of the interests of the Presque Isle Corporation, which is a valued customer of Consumers Power Company, and which paid for the cost of the construction of the transmission line which enables Consumers Power Company to bring its electric energy into this area.

"The Presque Isle Corporation is entitled to refunds of such costs of construction on the basis of revenues which we may derive from sales to customers served from that line. We therefore believe that it would be inappropriate for us to take any action which would tend to reduce the refunds which the Presque Isle Corporation might otherwise receive.

"Now, on the other hand, the Alpena Power Company is presently rendering service in the area in which these industries are located. Alpena Power Company also is a valued customer of ours, or soon will be. Moreover, the Alpena Power Company was of great assistance to Consumers Power Company in the acquisition of the necessary rights-of-way for

these transmission lines by which we bring our power supply into this area. In fact, the Alpena Power Company actually gave us rights-of-way across their property. Certainly it would be inappropriate for us to attempt to serve any customer in their service area without their consent."

Thus Consumers does not offer the service requested, does not profess to serve the area, has no power lines into the city in which Huron is located, and has requested no certificate of public convenience and necessity to the area in which Huron is located. Hence, those cases involving an undertaking of service to an area, particularly where a statute empowers the commission to order reasonable extensions of the mains and service (*e.g., New York, ex rel. Woodhaven Gas Light Company,* v. *Public Service Commission,* 269 US 244 [46 S Ct 83, 70 L ed 255], are not controlling on the issue before us. If, under the circumstances related as to the position and dedication of Consumers, the commission is empowered to order such service to be rendered to Huron, it will require legislative mandate in the clearest possible terms. Finding such, a constitutional question of serious import would next be presented.* It is pertinent to observe, also, with respect to the legislation under consideration, that its economic wisdom, or lack thereof, is not our concern. We do not weigh the relative merits of Alpena Power's possible loss of revenue if this service cannot be rendered by it, loss to stockholders, and ultimate passing of the burden to the customers of Alpena Power, against the effect upon Huron's competitive position if the direct purchase from Consumers' can be made at a lower rate than

---

* *E.g., Hollywood Chamber of Commerce* v. *Railroad Commission* (syllabus 1), 192 Cal 307 (219 P 983, 30 ALR 68): "Neither the railroad commission nor any other governmental agency possesses the power to compel a street railway company to extend its streetcar lines at its own expense into a territory which it does not and has never undertaken to serve."

elsewhere. Those are matters of legislative concern. We have had presented to us, upon certiorari, an issue of law, the statutory authority of the commission in the light of the facts before us to order the service, and upon that, and that only, do we propose to pass.

At the outset we will observe that the Michigan public service commission has no common-law powers. As we stated in *Sparta Foundry Co.* v. *Michigan Public Utilities Commission,* 275 Mich 562, 564:

"The Michigan public utilities commission is an administrative body created by statute and the warrant for the exercise of all its power and authority must be found in statutory enactments."

We turn, then, to the statutory enactments. Appellant first cites to us section 6 of PA 1939, No 3, as amended (CLS 1956, § 460.6 [Stat Ann 1955 Cum Supp § 22.13(6)]), which thus describes the statutory jurisdiction of the commission:

"Sec. 6. The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except any municipally owned utility and except as otherwise restricted by law. It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service and all other matters pertaining to the formation, operation, or direction of such public utilities. It is further granted the power and jurisdiction to hear and pass upon all matters pertaining to or necessary or incident to such regulation of all public utilities, including electric light and power companies, whether private, corporate or cooperative, gas companies, telephone, telegraph, oil, gas, and pipeline companies, motor carriers, and all public transportation and communication agencies other than railroads and railroad companies.

"The Michigan public service commission shall have the same measure of authority with respect to railroads and railroad companies as is granted and conferred under the various provisions of the statutes creating the Michigan railroad commission and its successor, the Michigan public utilities commission, and defining their powers and duties."

The broad language, however, furnishes no grant of specific powers. It is an outline of jurisdiction in the commission and does not purport to be more. If, indeed, the general language quoted had the effect of vesting particular, specific, powers in the commission, not only would a constitutional question be presented arising from an asserted lack of standards (42 Am Jur, Public Administrative Law, § 45, p 343; *A.L.A. Schechter Poultry Corp.* v. *United States,* 295 US 495 [55 S Ct 837, 79 L ed 1570, 97 ALR 947]; *Harrigan & Reid Co.* v. *Burton,* 224 Mich 564 [33 ALR 142]), but there would have been no need whatever for the many statutes enacted (both before and after the effective date of PA 1939, No 3) vesting specific powers in the commission.*

We agree, on this aspect of the case, with the analysis of Mr. Justice Carr in his opinion (when sitting on the circuit court for the county of Ingham) in the case of *Michigan Bell Telephone Co.* v. *Public Service Commission,* 315 Mich 533 (66 PUR NS 287), wherein he held:

"In reaching the conclusion that it had the requisite power to require a refund to plaintiff's subscribers, the defendant commission expressly relied on section 6 of PA 1939, No 3, and stated that the con-

---

* *E.g.,* transmission of electricity through highway act, PA 1909, No 106 (CL 1948, § 460.551 *et seq.* [Stat Ann § 22.151 *et seq.*]); PA 1952, No 173 (CLS 1956, § 484.110 [Stat Ann 1955 Cum Supp § 22.1450]), amending act to regulate telephone companies, giving commission power (in application for rate increase) "to require the applicant to give such notice as it deems reasonable and necessary under the circumstances."

stitutionality of said section was assumed. Said statute, which was given immediate effect by the legislature, abolished the Michigan public utilities commission and created the defendant for the purpose of taking over the powers and duties that had been vested by law in the former commission and in the Michigan railroad commission. The validity of the immediate effect clause was before the Supreme Court of the State in *Todd* v. *Hull,* 288 Mich 521. Consideration was given to the changes made by the act in the existing law. In none of the 3 opinions filed was any reference made to section 6. It may be of some significance, also, that neither the pleadings nor the briefs of counsel contained any claim that the immediate effect clause should be sustained because of the added powers given to the new commission under section 6. We are justified in assuming, I believe, that careful consideration was given to the entire act, both by the Court and by counsel, and the conclusion reached that section 6 could not be construed as vesting the public service commission with the broad powers now claimed to have been granted by said section. It may be noted in passing that Justice BUSHNELL in his opinion used the following significant language (p 548):

". 'The intent and purpose of the new act are the same as the old. The new commission exercises precisely the same powers as the old.'

"Had section 6 been ignored on the theory that it was invalid, some indication to that effect would doubtless have been made by Court or counsel. The conclusion would therefore seem to be justified that at the time of the passage of the act of 1939 and its consideration by the Court in *Todd* v. *Hull* it was not generally considered that section 6 was to be given any such interpretation as is now claimed for it. Rather, it was apparently the accepted view that said section, read in connection with the rest of the act and with prior statutes pertaining to the regulation of public utilities was intended as affirmance of the intent of the legislature to substitute the new

commission for the old, to give it the same powers and duties, and to make the exercise of such powers and duties subject to the same limitations as had been previously established. The fact that the legislature in section 6 did not incorporate any basic rules, principles, or statements of policy to be observed by the commission may perhaps be regarded as indicating such intent merely."

Appellant relies, also, upon the provisions of the transmission act, PA 1909, No 106 (CL 1948, § 460-.551 *et seq.* [Stat Ann § 22.151 *et seq.*]), section 6 of which provides as follows:

"The commission shall have power in its discretion to order electric current for distribution to be delivered at a suitable primary voltage, to any city, village or township through which a transmission line or lines may pass; *to order service to be rendered by any such electric utility in any case in which it will be reasonable for such service* to be ordered; prescribe uniform methods of keeping accounts to be observed by all persons, firms or corporations engaged in such business of transmitting and supplying electricity, and to keep informed as to the methods employed by all electric utilities in the transaction of their business; and to see that their property is maintained and operated for the security and accommodation of the public and in compliance with the provisions of law." (Emphasis supplied.)

With reference to the above statute, Huron places particular emphasis upon the word "reasonable," arguing that, "The language of this statute could not be clearer or more explicit as to the jurisdiction and authority of the commission to order electric service from an existing electric utility in any case in which it is *reasonable* for the commission to order service." (Italics in the original.)

Such a construction, however, does violence to the remainder of the section. The grant to the commis-

sion is not unlimited, but restricted. It is given statutory power to order electric current (for distribution) to any community "through which a transmission line or lines may pass." The portion of the statute stressed by appellant, in fact, refers to the rendition of service by any "such"* utility and it is clear that the utility referred to is the utility whose transmission lines pass through the municipality involved. This is not the case before us. Consumers' lines do not pass through the city (Alpena) in which Huron seeks the service to be rendered.

Before section 6 may be invoked the statutory requirement of passage of the lines through the municipality must be satisfied.

It is the further assertion of appellant that it was unnecessary that Consumers petition the commission for the granting of a certificate of public convenience and necessity before the commission could properly order Consumers to render direct service to Huron. The statute involved is section 2 of PA 1929, No 69 (CL 1948, § 460.502 [Stat Ann § 22.142]), reading as follows:

"No public utility shall hereafter begin the construction or operation of any public utility plant or system thereof nor shall it render any service for the purpose of transacting or carrying on a local business either directly, or indirectly, by serving any other utility or agency so engaged in such local business, in any municipality in this State where any other utility or agency is then engaged in such local business and rendering the same sort of service, or where such municipality is receiving service of the same sort, until such public utility shall first obtain from the commission a certificate that public convenience and necessity requires or will require such construction, operation, service, or extension."

---

* See analysis of word "such" in *City of Traverse City* v. *Township of Blair*, 190 Mich 313, 324 (Ann Cas 1918E, 81).

The reason for certification was clearly stated in *Panhandle Eastern Pipe Line Co.* v. *Michigan Public Service Commission,* 328 Mich 650, 664 (86 PUR NS 1) (*aff'd,* 341 US 329 [71 S Ct 777, 95 L ed 993, 89 PUR NS 1]), in the following terms:

"Obviously, Panhandle seeks to skim the cream off the local market for natural gas in the municipality where the intervening defendant now provides such services, by selling gas to Ford Motor Company and other industrial users, without regard to the public convenience and necessity for natural gas by other users in the Detroit area, particularly for domestic use.  If Panhandle is free to compete at will for such local markets, and take the cream of the business, any other utility providing the same service in the same area might be forced to obtain higher rates for its services when it must obtain its natural gas from Panhandle, and thus would face a distinct disadvantage.  The right to exclude such competition, where the general public convenience and necessities so require, has been delegated by the legislature to the Michigan public service commission.  It is within the power of that commission, after a proper hearing and upon a proper showing of the facts and the necessities, to determine whether Panhandle, by selling natural gas direct to industrial users in Detroit, would thus serve the public convenience and the necessities of users of natural gas in that area where Panhandle now claims the absolute right to engage in such service."

See, also, Economics of Public Utility Regulation by Irston R. Barnes, p 229, wherein it is said:

"The requirement of a certificate of convenience and necessity may enable the commission to prevent the needless multiplication of companies serving the same territory, and at the same time to avoid a wasteful duplication of capital facilities, thus keeping the investment at the lowest figure consonant with satisfactory service.  By protecting the utility

from unnecessary competition, the risks inherent in utility investments are reduced and the cost of capital is thereby kept as low as the conditions of the investment market permit."

Appellant, however, urges that the statute applies only where a utility seeks to render a new service and that it has no application here since the commission (it asserts) has the statutory authority to order the rendition of the service. This latter argument we have heretofore examined and rejected. The statutory prerequisites for the ordering of such service not obtaining, it follows that in their absence the only means by which Consumers may provide the service is by voluntarily seeking and obtaining a certificate that public convenience and necessity require the rendering of the service. No such request has been made and that disposes of the matter. It is clear that the order of the commission must be sustained. Upon these conclusions there is no need to pass upon additional issues urged, including the constitutional franchise requirement (Const 1908, art 8, § 28), nor will we, upon certiorari, pass upon controverted issues of fact.

Order affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.