RAM BROADCASTING OF MICHIGAN, INC v MICHIGAN PUBLIC
SERVICE COMMISSION

Docket No. 52712. Submitted June 16, 1981, at Lansing.—Decided
February 2, 1982.

The Michigan Public Service Commission regulated radio com-
mon carriers (RCCs), granting, denying and transferring certifi-
cates of public convenience and necessity to applicants on a
case-by-case basis. Subsequently, the commission issued an
opinion and order stating it was without jurisdiction to regulate
radio common carriers, and it ceased regulating them. Ram
Broadcasting of Michigan, Inc., a radio common carrier, re-
quested a rehearing and a stay of the order before the commis-
sion, which were denied. Thereupon, Ram filed suit against the
commission in Ingham Circuit Court, seeking to have the
commission's order vacated. James T. Kallman, J., issued a
preliminary injunction requiring the commission to continue to
regulate RCCs during the pendency of the trial. Radio Relay
Corporation, another RCC, was permitted to intervene as a
defendant. The circuit court affirmed the orders of the commis-
sion and dissolved the preliminary injunction. The plaintiff
appeals. The Court of Appeals reinstated the preliminary in-
junction pending appeal. *Held:*

The Legislature did not intend that radio common carriers be
included within the purview of the telephone company act. To
interpret the statute and the legislative intent as including
RCCs would be judicial legislation of the kind frequently con-
demned. The commission must have a specific grant of regula-
tory authority from the Legislature to exercise jurisdiction over
RCCs. Because there is no such grant of authority, the orders of
the commission and circuit court are affirmed. The injunction is
dissolved.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 7, 8] 64 Am Jur 2d, Public Utilities §§ 230-232.
[3] 72 Am Jur 2d, Statutes §§ 194, 195.
[4-6] 73 Am Jur 2d, Statutes §§ 196, 206.
[7] 73 Am Jur 2d, Statutes § 210.

1. Public Utilities — Radio Common Carriers — Public Service Commission.

The public service commission act grants no regulatory powers to the commission absent other statutes granting specific regulatory jurisdiction; the Public Service Commission's jurisdiction over radio common carriers is not found in the public service commission act, thus, if the commission does have jurisdiction to regulate radio common carriers it must be grounded upon a specific grant of regulatory authority in another statute (MCL 460.1 *et seq.;* MSA 22.13[1] *et seq.).*

2. Public Utilities — Telephone Company Act — Jurisdiction.

The telephone company act provides that the Public Service Commission is vested with the same jurisdiction and powers over all telephones, telephone lines and telephone companies within the state as it has over railroad companies (MCL 484.102; MSA 22.1442).

3. Words and Phrases — Judicial Construction.

The Court of Appeals is governed by traditional rules of statutory construction; if a statute is unambiguous on its face further interpretation or construction will be avoided, but where ambiguity exists, it is the duty of the court to give effect to the legislative intent at the time the statute was passed.

4. Statutes — Ambiguous Statutes — Courts — Statutory Construction.

A court, in resolving a perceived ambiguity in a statute, should look to the object of the statute and the evil or mischief which it is designed to remedy and apply a reasonable construction of the statute which best accomplishes its purpose; ambiguous statutes should be interpreted by a court as a whole and construed so as to give effect to each provision and to produce an harmonious and consistent result, and specific words in a statute should be assigned their ordinary meaning unless a different interpretation is indicated.

5. Public Utilities — Telephone Company Act.

The term "telephone company" in the telephone company act should not be analyzed in isolation but rather should be analyzed in the context of the telephone company act read as a whole; meaning should be given to one section of the act only after due consideration of other sections so as to give effect to each provision and to produce a harmonious and consistent result (MCL 484.101 *et seq.;* MSA 22.1441 *et seq.).*

6. PUBLIC UTILITIES — TELEPHONE COMPANY ACT — RADIO COMMON
   CARRIERS.

   The Legislature's concern with telephone lines in the telephone
   company act indicates that the Legislature intended a narrow
   interpretation of the term "telephone company"; the Legisla-
   ture's concern with the lines installed by a "telephone com-
   pany" precludes application of the act to radio common carriers
   (MCL 484.101 et seq.; MSA 22.1441 et seq.).

7. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RADIO COMMON
   CARRIERS.

   The original grant of jurisdiction to the Public Service Commis-
   sion over telephone companies may properly include advance-
   ments in telephone service brought about by mere changes in
   the state of the art of telephony; however, radio common
   carrier service is not one of those advances; the mere possibility
   that if the Legislature had foreseen the development of radio
   common carrier services it would have declared them to be
   telephone companies within the meaning of the act does not
   authorize or justify judicial usurpation of the legislative func-
   tion.

8. PUBLIC UTILITIES — PUBLIC AGENCIES.

   The extent of the authority of public agencies should be mea-
   sured by the statute from which they derived their authority
   and not by their own acts and assumption of authority.

*Miller, Canfield, Paddock & Stone* (by *Larry J. Saylor*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Arthur E. D'Hondt* and *John M. Dempsey*, Assistants Attorney General, for Michigan Public Service Commission.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *David E. S. Marvin*), for Radio-Relay Corporation.

Before: T. M. BURNS, P.J., and D. E. HOLBROOK, JR., and K. B. GLASER,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

D. E. HOLBROOK, JR., J. Plaintiff appeals as of right from a judgment of the circuit court affirming two orders of the Michigan Public Service Commission (MPSC). Both orders involve the MPSC's finding that it lacks specific jurisdiction to regulate radio common carriers (RCCs).

There is no factual dispute to decide or evidentiary record to review in this case. We are faced with a pure question of law as to whether the MPSC and circuit court erred in their statutory interpretation that found the MPSC without jurisdiction to regulate RCCs. A brief description of the proceedings which led to this appeal is necessary to understand the issues involved.

All parties agree that the MPSC aptly described RCCs in its opinion:

"A Radio Common Carrier is a common carrier authorized to transmit and receive radio signals to and from mobile transmitters (e.g., landmobile, air to ground, marine, coastal harbor) and retransmit those signals to other radio receivers and/or to a point of interconnection with the National Public Switched Telecommunications Network.

"Three basic types of service are provided by RCCs in Michigan:

"1. *Radiotelephone Service*—involves two-way radiotelephone communications between landline telephone and mobile transmitters/receivers or between two mobile transmitters/receivers; and requires either manual or direct automatic interconnection of the radio facilities with the nationwide telephone network of AT&T and associated telephone companies.

"2. *Dispatch Service*—involves two-way radio communications between mobile transmitter receivers and either (1) a fixed location transmitter/receiver, or (2) other mobile units.

"3. *Signalling or Paging Services*—involves a one-way radio communication to a small portable receiver carried by persons. Paging units carried by physicians or

repairmen alerting them to call their offices are examples of this service.

* * *

"Traditionally, RCCs have been described in technical terms in two ways:
"(1) Interconnected Service (automatic and manual).
"(2) Noninterconnected service.
"Interconnection is the term used to describe the physical electronic connection of the radio facilities of the RCC to the landline telephone network. The interconnection may be automatically made, through electronic connection in which case the call automatically passes through connecting facilities into the exchange and toll network of the landline companies. The interconnection can also be made manually by connection of the telephone call into the RCC system through a jack, through which the calling party may transmit the message.
"Noninterconnected service is a service where the message is transferred between the landline telephone and the RCC system by a person. The radio facility and landline facility are independent of each other." Case No. U-5603 (Oct 16, 1979).

Since 1965, RCCs in Michigan have been regulated by the MPSC, by asserting jurisdiction under 1913 PA 206, commonly called the telephone company act, MCL 484.101 *et seq.;* MSA 22.1441 *et seq.* Regulation has proceeded on a case-by-case basis with the MPSC granting, denying and transferring certificates of public convenience and necessity to applicants. These certificates authorize the grantee to offer exclusive RCC services in a specific area, with the exception of the Detroit area where three competing services are authorized. The MPSC has also regulated rates, charges and other factors affecting service. In addition, the commission has regulated the issuance of securities pursuant to MCL 460.301 *et seq.;* MSA 22.101 *et seq.,* and collected issuance fees equal to 1/10 of

one percent of the face value of securities issued by RCCs, under MCL 460.61; MSA 22.11.

On November 7, 1977, on its own motion, the MPSC initiated Case No. U-5603, by ordering hearings to produce a record for the commission's consideration. The commission directed the inquiry to nine questions in particular, centering on the question to what extent, if any, RCCs should be regulated by the MPSC.

On October 16,. 1979, the MPSC issued an opinion and order stating it was without jurisdiction to regulate RCC services, operating intrastate, whether provided by landline companies or others. The commission determined that RCCs were not telephone companies within the intent of the Legislature in enacting the telephone company act. Since the jurisdiction and powers established in the act did not convey power to regulate RCC services, the MPSC ceased regulating them as of the date of its order. Plaintiff's request for a rehearing and motion for a stay of the order were both denied by the MPSC.

On November 14, 1979, plaintiff filed its complaint in circuit court, pursuant to MCL 460.4; MSA 22.13(4) and MCL 462.26; MSA 22.45, seeking to vacate the MPSC order in Case No. U-5603. Among other things, plaintiff sought a temporary injunction directing the MPSC to resume regulation of RCCs pending a trial on the merits. On November 28, 1979, the trial judge issued a preliminary injunction requiring the commission to continue to regulate RCCs during the pendency of the trial.

On December 13, 1979, intervening appellee, Radio Relay, filed a petition for a declaratory ruling asking the MPSC to clarify the legal status of RCC services commenced between the date of

the deregulation order and the date of the preliminary injunction. In Case No. U-6368, the commission found that all activities initiated and in place during the interim period were lawful and could continue, since they were undertaken in reliance upon the order in Case No. U-5603. Plaintiff claimed that it was aggrieved by the decision in Case No. U-6368 and appealed to the circuit court. The parties stipulated that Radio Relay be permitted to intervene as a defendant and that the two appeals be consolidated.

On appeal, the circuit court found that RCCs are not within the MPSC's jurisdiction under the telephone company act nor are RCCs public utilities subject to MPSC jurisdiction under the public service commission act, MCL 460.1 *et seq.;* MSA 22.13(1) *et seq.* The court also rejected plaintiff's claim that the commission failed to follow the procedural requirements of the Michigan Administrative Procedures Act of 1969. Therefore, the court ordered that the rulings of the MPSC be affirmed, and that the preliminary injunction be dissolved. This Court reinstated the preliminary injunction pending appeal.

Plaintiff raises several issues, but the key question, dispositive of this appeal, is whether RCCs are "telephone companies" within the meaning of the telephone company act, MCL 484.101 *et seq.;* MSA 22.1441 *et seq.,* and, as such, a public utility subject to the MPSC's jurisdiction under MCL 460.6; MSA 22.13(6). Although this is a question of first impression in Michigan, the question has been confronted in other jurisdictions. Therefore, our determination whether the MPSC and circuit court correctly interpreted the statute requires some extended analysis.

It should be noted at the outset that the public

service commission act, MCL 460.1 *et seq.;* MSA
22.13(1) *et seq.,* grants no regulatory powers absent
other statutes granting specific regulatory jurisdic-
tion. MCL 460.6; MSA 22.13(6) vests the MPSC
with "complete power and jurisdiction to regulate
all public utilities". However, the Michigan Su-
preme Court has found that this broad language
furnishes no grant of specific powers; it is only an
outline of jurisdiction in the commission. *Huron
Portland Cement Co v Public Service Comm,* 351
Mich 255, 263; 88 NW2d 492 (1958). The MPSC's
jurisdiction over RCCs is not found in this act so it
must be grounded upon a specific grant of regula-
tory authority in another statute.

Plaintiff contends that the MPSC's jurisdiction
over RCCs is grounded in the telephone company
act. MCL 484.102; MSA 22.1442 provides that the
Michigan Railroad Commission, now the MPSC,[1] is
vested with the same jurisdiction and powers over
all "telephones, telephone lines and telephone
companies within the state" as it has over railroad
companies. The scope of the terms "telephones,
telephone lines and telephone companies", as used
in the act, is not defined in the statute and has not
been previously considered by this Court. How-
ever, in construing provisions of the telephone
company act, we are guided by the generally ac-
cepted principles of statutory interpretation. These
traditional rules of construction have been set out
in *Charter Twp of Pittsfield v City of Saline,* 103
Mich App 99, 104-105; 302 NW2d 608 (1981), as
follows:

"[I]f the statute is unambiguous on its face, we will

[1] The Michigan Railroad Commission was abolished and its func-
tions were transferred to the Michigan Public Utilities Commission
(MPUC) by MCL 460.53; MSA 22.3 and MCL 460.101; MSA 22.81. The
MPUC was in turn abolished and its functions were transferred to the
MPSC by MCL 460.4; MSA 22.13(4).

avoid further interpretation or construction of its terms. * * * However, if ambiguity exists, it is our duty to give effect to the intention of the Legislature in enacting the statute * * *. To resolve a perceived ambiguity, a court will look to the object of the statute, the evil or mischief which it is designed to remedy, and will apply a reasonable construction which best accomplishes the statute's purpose. * * * Also, ambiguous statutes will be interpreted as a whole and construed so as to give effect to each provision and to produce an harmonious and consistent result. * * * Further, specific words in a given statute will be assigned their ordinary meaning unless a different interpretation is indicated." (Citations omitted.)

The term "telephone company", as used in the telephone company act, is susceptible to ambiguity. Plaintiff contends that it is a broad term that must be construed in the light of developments in the art of telephony. Ram argues that RCC service is one of the advancements in this field. Appellees contend that "telephone company", as used in the statute, is limited to businesses operating telephone lines or exchanges.

To resolve this ambiguity, we recognize that the primary rule of statutory construction is to discover and give effect to the intent of the Legislature. It is our duty to give effect to the intent of the Legislature at the time the act was passed. *Husted v Consumers Power Co,* 376 Mich 41; 135 NW2d 370 (1965). As in *Husted,* we are dependent upon what courts wrote at the time of or shortly after enactment of the statute, which, considered then as the purpose and intent, has remained unamended in substance. In *Michigan State Telephone Co v Michigan Railroad Comm,* 193 Mich 515, 525; 161 NW 240 (1916), it appeared to the Court that landline telephone companies were brought under the regulatory control of the rail-

road commission because they had established separate duplicative telephone lines, maintained their own separate exchanges, and thereby created an unworkable and undesirable proliferation of telephone lines and equipment. The Court stated that these evils, which come largely from the existence of competing companies in the same community, were evidently within the view of the Legislature when telephone companies were brought under the control of the railroad commission.

The problems addressed by the telephone company act do not exist with respect to RCCs. RCCs, like commercial radio stations, operate on the air waves and are free to compete with each other without the need for costly duplication of telephone equipment and the laying of telephone cable. Also, the grant of monopolistic status to induce telephone companies to make significant capital expenditures and thereby extend and upgrade telephone service throughout the state is not applicable to RCCs since substantial capital expenditures for physical plant and equipment are not required to supply service in an area.

We do not analyze the term "telephone company" in isolation, but rather in the context of the telephone company act read as a whole. Meaning will be given to one section only after due consideration of other sections so as to give effect to each provision and to produce a harmonious and consistent result. *Charter Twp of Pittsfield, supra.* Section 1 of the telephone company act declares that any organization "operating telephone lines or exchanges doing a telephone business within the state of Michigan" is a common carrier. Section 2 states that the commission shall have general control of all "telephone lines". Section 3 requires

all telephone businesses within the state "to furnish reasonably adequate service and facilities for the use of their lines by the public". Section 3 also requires the commission to prescribe the standard of construction and equipment that shall be maintained by any business "maintaining a physical connection between the lines and facilities" of that business and any other business. Section 6 concerns the power of the commission to order physical connection of lines. Section 7 requires companies under commission order to provide for the physical connection of lines and also to perform switching services for the transmission of messages. Section 8 governs the sale or lease of lines or equipment by a telephone company.

Section 9 describes the application procedures for a certificate of public convenience and necessity. Each application for a certificate "shall be accompanied by a map or plat showing the proposed line or lines which it is desired to construct and the line or lines of any person, co-partnership or corporation serving the same territory". Each application must be accompanied by a schedule of rates which it proposes to charge "for service in the event of the construction of said line or lines". In the granting of any certificate, the commission shall fix the rates to be imposed "in the event of the construction of such telephone line or lines".

Section 10 concerns applications for increases in rates and gives the commission power to require the applicant to give public notice except in those instances where the application is accompanied by a notice and proof of publication in a newspaper of general circulation "in the territory served by the line or lines of such applicant". Sections 19, 21 and 22 concern annual reports, accessibility of rates for public inspection and penalties for any organization "operating telephone lines and facilities".

The Legislature's concern with telephone lines in the telephone company act indicates that the Legislature intended a narrow interpretation of the term "telephone company". The repeated use of the term "lines" reflects a legislative intent to meet the physical needs for proper location of the lines by which a company providing telephone services transmits its messages and an intent to avoid expensive duplication of physical plant facilities.

An interpretation of "telephone company" in the context of the whole act does not extend to include RCCs. The Legislature's concern with the lines installed by a "telephone company" precludes application of the act to RCCs. The distinguishing factor was succinctly stated by the circuit judge. "RCCs employ no lines, connect no lines, sell no lines, lease no lines, and construct no lines." Furthermore, the act does not indicate that a different interpretation should be given to "telephone companies" so as to include RCCs.

We agree with plaintiff that the grant of jurisdiction made to the commission in 1913 can properly include advancements in telephone service brought about by mere changes in the state of the art of telephony. However, under Michigan's statute, RCC service is not one of those advances. It may be that if the Legislature had foreseen the development of RCC services, it would have declared them to be telephone companies within the meaning of the act. However, this possibility does not authorize or justify judicial usurpation of the legislative function. *Lawrence v Dep't of Corrections,* 88 Mich App 167; 276 NW2d 554 (1979), *lv den* 407 Mich 909 (1979).

Ram also argues that the MPSC may not abandon its long-standing interpretation of its govern-

ing statutes. This argument is premised on the principle that the practical construction of a statute by an administrative agency, which is acquiesced in by the Legislature for a long period of time, is a persuasive indicator of legislative intent. In the case cited by plaintiff, *Chesapeake & Ohio R Co v Public Service Comm,* 347 Mich 234; 79 NW2d 586 (1956), the indications of legislative intent were far more apparent than in this case. The question was whether a contract entered into by a state agency was a nullity because it was not authorized by statute. For 25 years the State Highway Department had been entering into such contracts since the enactment of the statute in question. A substantial question of constitutionality was present if the department could not enter into such an agreement. In addition, the contract was fully executed by the party claiming under it.

In the present case, the MPSC exercised jurisdiction over RCCs for approximately 15 years. It did not exercise jurisdiction over RCCs for the preceding 52 years. Also, the state is not one of two contracting parties seeking to excuse itself from the contract. Finally, the interpretation of legislative intent in *C & O R Co,* as the Supreme Court found, was the most reasonable interpretation of the statute involved. In this case, the most reasonable interpretation of the telephone company act does not extend to include RCCs.

The more appropriate rule of statutory construction is that the extent of the authority of public agencies is measured by the statute from which they derived their authority and not by their own acts and assumption of authority. *Mason County Civic Research Council v Mason County,* 343 Mich 313; 72 NW2d 292 (1955). Moreover, this is not an area in which the commission's technical expertise

suggests that the Legislature would be likely to acquiesce in the MPSC's interpretation. It is a pure question of law involving statutory interpretation, one in which the MPSC's technical expertise plays a small role.

Lastly, appellant relies on a number of decisions from other jurisdictions finding that RCC service is "telephone service" or a variation thereof. These decisions do not provide persuasive authority, since most are based on statutory grants of jurisdiction which are broader than that in 1913 PA 206. Generally, two types of enactments in these jurisdictions specifically confer power over RCCs.

The first type of statute contains specific definitions of key terms to encompass RCCs within the field of activity regulated. An example of this is Cal Pub Util Code § 233 (West):

" 'Telephone line' includes all * * * instruments, and appliances * * * in connection with or to facilitate communication by telephone, whether such communication is had with or without the use of transmission wires."

Many other statutes are identical. See Ariz Rev Stat Ann § 40-201(11), Idaho Code § 61-120, Me Rev Stat Ann title 35, § 15(20). Similarly, other states broadly define telephone services to include RCCs. Del Code Ann title 26, § 102(2), includes "domestic public land mobile radio service" within the definition of a public utility. Others include: "furnishing telecommunications service to the public", Alaska Stat § 42.05.701(2)(B); "transmitting intelligence by * * * telephone, or other system of transmitting intelligence, the equivalent thereof, which may be hereafter invented or discovered", Ark Stat Ann § 73-1801; and "transmission of intelligence by electricity by land or water or air", Hawaii Rev

Stat § 269-1. Missouri regulates "all devices * * * to facilitate the business of affording telephonic communication". Mo Ann Stat § 386.020(18) (Vernon).[2]

Michigan's telephone company act has no definitions section to expand the meaning of "telephone line" or "telephone company". The statute contains no broad conferral of power over all "intelligence" or "devices" and fails to mention paging or radio telephone services. The warrant for exercise of power over RCCs by other state commissions is found in their broad enactments. No similar warrant is found in 1913 PA 206.

The second type of statute specifically regulates RCCs. Separate from its telephone regulatory statutes, Alabama has a Radio Utility Act, which requires certificates of public convenience and necessity for RCC services and commission regulation of rates. Ala Code § 37-4-100 *et seq.* The Georgia Radio Utility Act, Ga Code Ann § 93-901 *et seq.,* covers licensed "miscellaneous common carriers in the domestic public land mobile radio service", but specifically excludes from its reach the telephone utilities otherwise regulated by the Public Service Commission. Michigan has no statute that specifically regulates RCCs.

In ruling that RCCs are within the jurisdiction of the public utility commission, two states rely upon either the general constitutional power of the public utility commission or a statute generally defining the commission's jurisdiction. The constitution of Nebraska gives the state railway

---

[2] The Missouri Public Service Commission has no jurisdiction over one-way, noninterconnected radio paging services operated solely as a supplement to a telephone answering service. Such a service is not a "telephone corporation" or "telephone line" within the meaning of the statute, since it does not afford "telephonic communication". Op Gen Counsel MoPSC No 70-17 (Sept 11, 1970).

commission, "plenary power to regulate common carriers" and "in the absence of specific legislation, the powers and duties of the Commission, as enumerated in the Constitution, are absolute and unqualified". *Radio-Fone, Inc v ATS Mobile Telephone, Inc,* 187 Neb 637; 193 NW2d 442 (1972); *overruled on other grounds ATS Mobile Telephone, Inc v General Communications Co, Inc,* 204 Neb 141; 282 NW2d 16 (1979).

The North Carolina Supreme Court relies on a broad definition of "public utility" to find public service commission jurisdiction over RCCs. However, it specifically found that RCCs were not "telephone utilities" under the statute. *State ex rel Utilities Comm v Carolina Telephone & Telegraph Co,* 267 NC 257; 148 SE2d 100 (1966). As noted earlier, the broad language defining the MPSC's jurisdiction grants no regulatory powers. *Huron Portland Cement Co, supra.*

Equally unpersuasive are decisions that find RCCs outside the terms of that state's regulatory statute. In those cases the courts are also relying on statutory language that is dissimilar to Michigan's statute. The Ohio Supreme Court relied heavily on the history of its communication statute in finding that RCCs were not telephone companies for the purposes of its public utility commission's jurisdiction. That court also found that RCCs were only marginally connected to the telephone business and were not in essence "public utilities". *Radio Relay Corp—Ohio v Public Utilities Comm,* 45 Ohio St 2d 121; 341 NE2d 826 (1976).

In the closest situation to that presented here, the Florida Supreme Court ruled that RCCs were not "telephone companies" within the terms of that state's regulatory statute. *Radio Telephone*

*Communications, Inc v Southeastern Telephone Co,* 170 So 2d 577 (Fla, 1964), *aff'd on reh* 170 So 2d 577 (Fla, 1965). The pertinent statute contained a definition of the term "telephone company" which incorporated a broad definition of "telephone line" including "all devices * * * used * * * to facilitate the business of affording telephonic communication". Fla Stat Ann § 364.02(5) (West). Although noting that a literal reading of the statute might include RCCs, the court found that the Legislature did not intend to regulate RCCs. The court concluded that RCCs should not be regulated as telephone companies until the legislature specifically decided to enter the field.[3]

In summary, there is ample authority from other jurisdictions to support the arguments of all parties. However, most of the cases rely on statutory grants of authority far broader than that contained in Michigan's statute. We have no alternative but to interpret Michigan statutes in accordance with the intent of Michigan's Legislature. We find that the Legislature did not intend RCCs to be within the purview of 1913 PA 206. To interpret the statute and the legislative intent as including RCCs would, in our opinion, be judicial legislation of the kind frequently condemned.

In view of the foregoing, it is unnecessary for us to discuss other assignments of error by the MPSC. Absent statutory authority, the commission has no power to regulate. Accordingly, we affirm the judgment of the circuit court and dissolve the injunction.

Affirmed. No costs. Statutory construction and a public question involved.

[3] In 1965, the legislature entered the field by amending the definition of "telephone line" in Fla Stat Ann § 364.02(5) (West) to include "radio and other advancements in the art of telephony".