# JANUARY TERM, 1959.

***

GRAND TRUNK WESTERN RAILROAD COMPANY *v.*
PUBLIC SERVICE COMMISSION.

1. RAILROADS—HIGHWAY CROSSING—COST OF WIDENING.
   The widening of an existing highway crossing of a railroad at
   grade is an improvement of the crossing, hence, the expense
   of doing the necessary work is to be met by the parties
   responsible for the work of maintaining and repairing the
   crossing as provided by statute, since the result attained is
   not the construction of a new road but, rather, the improve-
   ment of the existing one (CL 1948, § 469.1).

2. SAME—HIGHWAY CROSSING—FLASHING LIGHT SIGNALS AND AUTO-
   MATIC GATE ARMS—RELOCATION EXPENSE—CONTRACTS.
   Written agreement between railroad company and State highway

REFERENCES FOR POINTS IN HEADNOTES
[1] 44 Am Jur, Railroads § 311.
[2] 44 Am Jur, Railroads §§ 520, 528.
[3] 14 Am Jur, Costs § 106.

commissioner relative to installation of flashing light signals with automatic gate arms at grade crossing of highway over railroad whereby the installation or relocation thereof upon widening of highway was to be at the expense of the highway department and the operation and maintenance after completion of installation was the sole expense of the railroad company *held*, a valid contract (CL 1948, § 469.1).

3. COSTS—RAILROADS—HIGHWAY CROSSINGS—PROTECTION DEVICES— EXPENSES.

No costs are allowed in suit to review determination of circuit court on appeal from public service commission with respect to apportionment of expense of widening highway crossing at grade over railroad and relocation of flashing light signals and automatic gate arms.

Appeal from Ingham; Salmon (Marvin J.), J. Submitted October 8, 1958. (Docket No. 19, Calendar No. 47,096.) Decided January 12, 1959.

Bill by Grand Trunk Western Railroad Company, a Michigan corporation, against the Michigan Public Service Commission, with the Michigan State Highway Commissioner intervening, to test validity of order allocating expense of relocating safety devices upon improvement of highway-railroad grade crossing. Decree for plaintiff. Defendants appeal. Affirmed.

*Jennings, Fraser, Parsons & Trebilcock, H. V. Spike* and *Forbes B. Henderson,* for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Robert A. Derengoski* and *Louis J. Caruso,* Assistants Attorney General, for defendants.

CARR, J. Plaintiff's railroad tracks in the village of Schoolcraft, Kalamazoo county, Michigan, are crossed at grade by State trunk-line highway US–

131.  Prior to the month of June, 1937, the crossing was not protected by safety devices.  In that month the State highway commissioner and the railroad company entered into a written agreement for the installation of flash light signals with automatic gate arms operating over the traffic side of the highway.  The contract provided that the cost of furnishing and installing the safety devices in question should be financed by the highway department, and that plans and specifications should be subject to approval by the proper Federal authorities before construction work was started.

The railroad company undertook to prepare a detailed list of equipment, materials and specifications, together with estimates of cost for the proposed installations.  The highway department was charged with responsibility for advertising for bids and awarding contracts.  It was further stipulated that the operation and maintenance of the protective signals after completion of installation should be at the sole expense of the railroad company.  Paragraph 10 of the contract read as follows:

"That if, due to the widening or other change of said highway, the local relocation of any of the signals so installed becomes necessary, the expense thereof shall be borne by the highway department or county road commission as the case may be."

The agreement in question was carried out, and the safety devices were installed in accordance with plans adopted by the parties.  Presumably the approval of Federal authorities was obtained, and the Michigan public utilities commission, predecessor of the defendant, under date of August 23, 1937, approved the contract as made by the parties and the installation of the safety devices thereby contemplated.  No specific mention was made in the order with reference to the cost of the work to be done or

the matter of subsequent maintenance. Presumably the agreement of the parties with reference thereto was considered satisfactory.

In May, 1955, the State highway commissioner petitioned the defendant commission for permission to relocate the safety devices installed under the contract of 1937, in connection with a highway project involving the widening of trunk-line US–131, asking that the order provide for the sharing of the cost of the relocation in accordance with CL 1948, § 469.8 (Stat Ann § 22.768). The application was granted by order of the commission dated August 25, 1955, which directed that the cost of relocating the safety devices should be borne in equal shares by the highway department and the railroad company.

From the order of the commission plaintiff appealed to the circuit court of Ingham county, pursuant to the statute. Thereafter the highway commissioner filed a second petition with the defendant commission asking that an order issue authorizing the widening of the crossing. Such authority was granted on January 10, 1956, permitting changing the existing 18-foot pavement to a total width of 52 feet, comprising two 24-foot paved roadways separated by a 4-foot median strip. It was further ordered:

"That the cost and expense of that part of the improvement to the existing crossing shall be borne under the provisions of section 1 of PA 1921, No 270, and that all new crossing construction shall be borne under the provisions of section 2 of PA 1921, No 270."

The first section of the act of 1921 cited in the order, as amended by PA 1931, No 336 (CL 1948, § 469.1 [Stat Ann § 22.761]), directs that the cost of improving an existing crossing, when necessary, shall be borne by the respective parties responsible

for the work of maintaining and repairing as provided in said section. Section 2 of the act (CL 1948, § 469.2 [Stat Ann § 22.762]) has reference to the construction of a new highway over an existing railroad, and conversely, and to the relocation of an existing crossing, or the establishment of a new crossing, if the public highway grade crossing is abandoned. The expense of such new crossing is required to be borne by the party requesting it. It appears from the defendant commission's order that it considered that the application to it contemplated an improvement of the existing crossing together with additional new crossing construction work.

Plaintiff filed a supplemental bill of complaint in the Ingham circuit court, setting up the orders of the commission and seeking review thereof pursuant to the statute. The State highway commissioner intervened in the case as a party defendant. The circuit judge reviewing the proceeding concluded that the widening of the crossing in accordance with the plans for the road project was an improvement and that, in consequence, the expense to be incurred in connection therewith should be borne by the parties concerned in accordance with section 1 of the act of 1921, as amended. The judge further held that the combination light and gate devices installed pursuant to the agreement of the parties were essentially different from the flashing light signals contemplated by section 8 of the act of 1921, as amended (CL 1948, § 469.8 [Stat Ann § 22.768]), and, also, not the type of device authorized by PA 1873, No 198.* It was also held that the 1937 contract between the State highway commissioner and the railroad company did not contravene the provisions of the statute defining the powers and duties of the public service commission, that it was not invalid for such rea-

---

* See CL 1948, § 466.2 (Stat Ann § 22.261).

son, and that the State highway commissioner had authority to contract with reference to the safety devices contemplated by the agreement as actually made and performed. A decree was entered accordingly and the defendants have appealed. Plaintiff filed a cross appeal, but its counsel in their brief ask that the decree be affirmed, indicating that the cross appeal was taken in order to fully protect the rights of the plaintiff in the event that the contract of 1937 is held to be invalid.

The first question at issue involves the provision of the decree entered in circuit court with reference to liability for the expense incurred in connection with the widening of the crossing. Is such widening to be regarded as an improvement, or as contemplating an improvement in part and a new crossing construction as to the balance of the work, or is it in fact a new crossing? As before noted, the circuit judge held that it was an improvement and that the resulting expense entailed in the work should be met accordingly. We are in accord with such holding. The widening of the crossing is a part of the highway project involving the widening of the trunk-line highway. The result to be attained is not the construction of a new road but, rather, the improvement of the existing one. The crossing partakes of the general nature of the project. It is, in consequence, to be regarded as an improvement within the meaning of the term as used in section 1 of PA 1921, No 270, as amended, above cited, and the expense in doing the necessary work is to be met in the manner contemplated by said section.

This brings us to the issue raised by the parties with reference to the cost of moving the combination light and gate safety devices installed in accordance with the contract of 1937. As the circuit judge observed in his opinion, such device is not merely a gate, nor is it a flashing light only. It was consid-

ered by the parties at the time they made their contract as essential to the proper protection of the crossing. Apparently defendant commission's predecessor agreed with such view and approved the arrangement as made.

Section 8 of the act of 1921, as amended, above cited, grants authority to the defendant commission to require the installation and maintenance of flashing lights designed for crossing protection, stating that:

"The cost of all flashing light installations and alterations or relocations of same shall be borne equally by the railway and highway authorities, and thereafter they shall be maintained by the railway authorities at their own expense except that the highway authorities shall pay $10 per month to the railroad authorities for each crossing protected by flash light signals."

It does not appear, however, that the legislature has spoken with reference to the cost of relocating gates when such action becomes necessary. The act of 1873, above cited, authorizes defendant commission to require the installation of gates, as this Court held in *Washtenaw County Road Commissioners* v. *Public Service Commission,* 349 Mich 663, but the provisions of said act still in force and effect are silent as to the cost of relocating gates, installed pursuant to an order of the commission, in the event of widening of a crossing.

The parties were within their rights in the contract of 1937 in covering the matter of cost of relocation of the safety devices, installed under the contract, by specific agreement. In *Chesapeake & Ohio R. Co.* v. *Public Service Commission,* 347 Mich 234, in which the authority of the State highway commissioner to enter into agreements with railroad companies with reference to highway-railroad crossings was consid-

ered and discussed, the Court concluded that the agreement involved, which had been executed, was binding upon the parties thereto. As above noted, section 8 of PA 1921, No 270, as amended, vests the defendant commission with authority to order flashing light installations. When so ordered the costs are required to be borne equally by railroad and highway authorities. Like provision is made with reference to alterations or relocations. In the instant proceeding the combination safety devices were installed pursuant to agreement between the parties and maintained in accordance therewith. Defendant commission's predecessor was not asked to apportion the cost, nor did it undertake to do so. In other words, the matter of costs was governed wholly by the contract and a type of device was installed that was deemed by the parties to be proper and requisite for the protection of the public.

As pointed out in *Chesapeake & Ohio R. Co.* v. *Public Service Commission, supra,* agreements in this general field have been recognized as valid. In the instant case the contract in question was so considered and was relied on accordingly. Bearing in mind the nature of the agreement and construing it in the light of the statutory provisions to which our attention is directed, we conclude that it was, and is, valid, and that the circuit judge was right in so holding.

The decree is affirmed. In view of the nature of the controversy, no costs are allowed.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., did not sit.