(No. 55665.—

ILLINOIS CONSOLIDATED TELEPHONE COMPANY, Appellee, v. THE ILLINOIS COMMERCE COMMIS-SION, Appellant.

*Opinion filed January 24, 1983.—Rehearing denied April 8, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield (Hercules F. Bolos, Special Assistant Attorney General, James E. Weging, and Allen C. Wesolowski, Assistant Attorneys General, of counsel), for appellant.

Douglas G. Brown and Gary L. Smith, of Douglas G. Brown, P.C., of Springfield, and Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellee.

Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, of Champaign (Dennis K. Muncy, Dennis L. Myers, Peggy C. Thompson, and David E. Worsley, of counsel), for *amici curiae* Rogers Radio Communication Services, Inc., *et al.*

Paul E. Freehling and Charles M. Chadd, of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago for *amicus curiae* American Paging, Inc.

JUSTICE WARD delivered the opinion of the court:

We must consider on this appeal the authority of the Illinois Commerce Commission to regulate radio paging. The Commission granted Aircall Communications, Inc. (Aircall), a certificate of public convenience and necessity to operate a one-way radio paging business within an 18-mile radius of the village of Loxa in the Charleston-Mattoon area. Aircall proposed to provide tone-only and tone-and-voice paging services. At the time Aircall sought the certificate, Illinois Consolidated Telephone Company was already operating a paging service in the area involved pursuant to a certificate which had been granted earlier by the Commission. Illinois Consolidated intervened in the proceedings before the Commission and unsuccessfully opposed Aircall's application for a certificate. When the Commission granted Aircall a cer-

tificate, Illinois Consolidated appealed the decision to the circuit court of Coles County. The circuit court set aside the Commission's order and remanded the matter, on the ground that the Commission had failed to make specific findings on Illinois Consolidated's status under the "first in the field" doctrine, which protects a pioneer utility from competition in an area that it is adequately serving. The Commission appealed from that judgment, and Illinois Consolidated cross-appealed. On appeal, the Commission contended that it had no jurisdiction over radio paging. In its order granting the certificate to Aircall the Commission had found that it had jurisdiction; however, the Commission stated in the appellate court that it had reconsidered its position, and that it had concluded that it had erred in that respect. The appellate court held that the Commission does have jurisdiction over radio paging and affirmed the circuit court. (99 Ill. App. 3d 462.) We granted a petition for leave to appeal to this court filed by the Commission under Rule 315 (73 Ill. 2d R. 315).

Two questions are presented to us. First, whether the General Assembly has granted the Commission jurisdiction over the radio-paging industry. Second, if the Commission does have jurisdiction, should it have applied the "first in the field" doctrine.

The parties agree that the Commission has authority under State law to regulate radio paging only if this activity falls within the following provision of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111⅔, par. 10.3(b)) (the Act):

> " 'Public utility' means and includes every corporation, company, association, joint stock company or association, firm, partnership or individual, their lessees, trustees, or receivers appointed by any court whatsoever that owns, controls, operates or manages, within this State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with,

or owns or controls any franchise, license, permit or right to engage in:

\* \* \*

  b. the transmission of telegraph or telephone messages between points within this State; \* \* \*.''

Thus, the first issue is whether persons that provide one-way radio paging own or operate equipment used "for or in connection with \* \* \* the transmission of telegraph or telephone messages." We judge that they do not.

In the type of radio paging here, a subscriber is furnished with a receiver that is tuned to a particular radio frequency. A person desiring to communicate with the subscriber may phone the paging company, where either an employee or automatic equipment will send a radio signal to the subscriber. His receiver will emit a beep (in tone-only paging), or a beep followed by 12 second voice message (tone-and-voice paging). The subscriber then can place a telephone call to the person wishing to reach him. Also, there is a dual address variation in the tone-only service. That involves the use of two different tones, with each tone signaling the subscriber to call a particular source for information. In one-way radio paging, the paging device cannot be used to carry on a two-way conversation.

A paging service is granted the right to use a radio frequency by the Federal Communications Commission. Awards of radio frequencies are under exclusively Federal control. 47 U.S.C. sec. 301 (1976). *Head v. New Mexico Board of Examiners in Optometry* (1963), 374 U.S. 424, 430 n.6, 10 L. Ed. 2d 983, 988 n.6, 83 S. Ct. 1759, 1763 n.6; *Schroeder v. Municipal Court* (1977), 73 Cal. App. 3d 841, 845-46, 141 Cal. Rptr. 85, 87, *appeal dismissed* (1978), 435 U.S. 990, 56 L. Ed. 2d 81, 98 S. Ct. 1641.

In *Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill. 2d 205, this court considered whether the Commission had jurisdiction over cable television transmissions. The Commission had decided that the jurisdiction given it over telegraph and telephone serv-

ices was sufficiently broad to include authority to regulate the transmission of television messages by cable. The Commission found:

> "1. Cable television is a system of delivery of television signals over a grid of coaxial cables possessing a broad frequency bandwidth, which system can also deliver a variety of other video, audio, and data-grade signals. The system as a whole is properly termed 'broadband cable communications.'
>
> \*\*\*
>
> (b) There is at present a significant service overlap between the offerings of cable television and telephone companies \*\*\*." 55 Ill. 2d 205, 208.

This court did not agree that the Commission had the authority to regulate cable television. It judged that the Public Utility Act did not give the Commission jurisdiction over the entire telecommunications field. (55 Ill. 2d 205, 221.) It said that the operative word in the relevant portion of the Act ("the transmission of telegraph or telephone messages") (Ill. Rev. Stat. 1971, ch. 111⅔, par. 10.3(b)) was not "messages" but "telephone" (55 Ill. 2d 205, 213), and the words "telephone service" should be given "their plain and commonly ascribed meanings" (55 Ill. 2d 205, 220). The court judged that cable television transmission was not within the meaning of the transmission of telephone or telegraph messages.

We consider that the paging here, which consists only of one-way radio signaling, does not fall within the Public Utilities Act and is not within the jurisdiction of the Commission. Giving the terms "telephone" and "telephone service" "their plain and commonly ascribed meanings" as directed in *Illinois-Indiana Cable Television*, one-way paging service simply is not "telephoning" and is not a "telephone service." The paging company does not itself transmit telephone messages. This court recently in *People v. Gervasi* (1982), 89 Ill. 2d 522, discussed the nature of the telephone, though in a context unrelated to the one in-

volved here. The court stressed that the capacity for two-way communication by voice was an essential of the concept of the telephone. "The function of a telephone is to transmit and receive sound," it was observed. (89 Ill. 2d 522, 527.) This certainly described the telephone in its "plain and commonly ascribed meaning." A paging service's function does not fit this description of a telephone's purpose.

We would observe, too, that in reaching the decision in *Illinois-Indiana Cable Television*, the court relied importantly upon *Television Transmission, Inc. v. Public Utilities Com.* (1956), 47 Cal. 2d 82, 301 P.2d 862, and *Minnesota Microwave, Inc. v. Public Service Com.* (1971), 291 Minn. 241, 190 N.W.2d 661. In both of those decisions, as this court recognized, the courts emphasized the one-way aspect of television when they distinguished television transmissions from telephone service. 55 Ill. 2d 205, 210-11, 213.

We do not judge that because the radio signal is a result of a telephone call by a person seeking the subscriber, the radio-paging business operates equipment used "for or in connection with *** the transmission of *** telephone messages." (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 10.3.) The paging service is but a recipient of a telephone call, and the service simply notifies its subscriber of the call. The Commission, having reconsidered and concluded that Aircall is not a public utility, argues that the paging company is in reality only an answering service with sophisticated equipment. (The only unique aspect of the service offered by paging businesses, the Commission argued in the appellate court, involves the use of radio signals, and the use of radio frequencies is licensed federally.) It may be that paging companies facilitate communication by telephone by signaling persons who are away from telephones, but the statute does not make every business that facilitates telephone communication a public utility. The Com-

mission points out that the publishers of telephone classified directories, such as legal or medical directories, also facilitate telephone communication, but it could hardly be said that those publishers were intended by the legislature to be considered public utilities. Similarly it could be said that simple answering services aid and facilitate telephone communication. But it is obvious that the nature of the service is not a functional part of the transmission of messages by telephone, nor is radio paging.

Several decisions from other jurisdictions dealing with the regulation of radio paging have been cited to us. With the exception of one decision, we have not found the cases particularly helpful, as those decisions interpret statutes with language and legislative histories differing from those of our statute. *E.g., RAM Broadcasting of Michigan, Inc. v. Michigan Public Service Com.* (1982), 113 Mich. App. 79, 85, 317 N.W.2d 295, 298 (radio common carriers, a term that includes both the providers of mobile telephone service and one-way paging, are not "telephone companies" within the narrow meaning intended by the legislature in the Act granting jurisdiction to the Public Service Commission); *In re Digital Paging Systems, Inc. v. Public Service Com.* (1974), 46 App. Div. 2d 92, 94-95, 360 N.Y.S.2d 931, 934 (a one-way radio paging company is a "telephone corporation" under a public service statute that defines a telephone company as a corporation operating a telephone line, which term includes "all devices *** used *** by any telephone corporation to facilitate the business of affording telephonic communication"); *In re Williams* (Wyo. 1981), 626 P.2d 564, 566 n.2, *cert. denied* (1981), 454 U.S. 896, 70 L. Ed. 2d 211, 102 S. Ct. 394 (radio common carriers, which generally provide mobile telephone service and occasionally offer paging services, are public utilities under a statute that includes any facility "for the transmission to or for the public of telephone messages *** or *** for the furnishing of facilities to or for the public for the

transmission of intelligence by electricity"). The decision in *Radio Relay Corp. v. Public Utilities Com.* (1976), 45 Ohio St. 2d 121, 341 N.E.2d 826, 74 Ohio Op. 2d 248, however, is relevant.

In *Radio Relay Corp.*, the Supreme Court of Ohio considered whether a radio-paging service was a public utility subject to the jurisdiction of the state Public Utilities Commission. The public utilities statute provided that telephone companies were subject to the Commission's jurisdiction. The statute defined a telephone company as a company "engaged in the business of transmitting telephonic messages to, from, through, or in this state *** and as such is a common carrier." 45 Ohio St. 2d 121, 124, 341 N.E.2d 826,829, 74 Ohio Op. 2d 248, 250.

The Commission found that Radio Relay, a one-way tone-only, radio-paging service, was a telephone company under the statute. Radio Relay had equipment that automatically answered calls and automatically signaled the subscriber. The Commission found that the signals emitted by the paging service were, in fact, "telephonic" messages.

The court disagreed. It examined the history of the statute and concluded that "signalling" companies were not within the meaning of telephone companies. The court judged that the Commission's finding that the paging service's signals were telephonic messages was "unreasonable and unlawful." (45 Ohio St. 2d 121, 129, 341 N.E.2d 826, 831, 74 Ohio Op. 2d 250, 252.) In so doing, the court pointed out:

> "In the present case, the dispatching terminal translates the digital tones received from the local telephone into two different tones generated by the dispatching terminal itself. These two tones are then sent to Radio Relay's transmitter for broadcast to subscriber's pager causing it to emit a beep. Radio Relay does not carry or broadcast any signals other than those generated by itself. Of equal importance, the party with the land-line telephone does not communicate with the subscriber who

carries the pager." 45 Ohio St. 2d 121, 129, 341 N.E.2d 826, 831, 74 Ohio Op. 2d 250, 252.

The court explained that it made no difference whether the signaling was initiated by a human answering the call at the paging service, or by a machine. The court observed that "[t]he service provided to the subscriber is exactly the same." 45 Ohio St. 2d 121, 129, 341 N.E.2d 826, 831, 74 Ohio Op. 2d 250, 252.

In judging that radio-paging companies are public utilities, the appellate court here relied heavily upon *Radio Relay Corp. v. Illinois Commerce Com.* (1977), 69 Ill. 2d 95. That decision, however, is distinguishable.

The issue in this court's decision in *Radio Relay* was whether a telephone utility company was required to obtain a certificate of public convenience and necessity from the Commission in order to operate its own one-way paging service which was connected to its landlines. The Act required a utility to obtain a certificate before transacting business and before beginning certain new construction work. (Ill. Rev. Stat. 1971, ch. 111⅔, par. 56.) An exception was made, though, for such new equipment or facilities that were an extension of or were in addition to existing equipment or facilities. 69 Ill. 2d 95, 101.

The court decided that the construction of paging facilities was within that exception. Thus, the court affirmed the Commission's holding that the paging service was an extension of or an addition to Bell's existing plant and equipment used in transacting its telephone and public utility business and accordingly no new certificate of public convenience and necessity was necessary.

Though there is *obiter dicta* language in the opinion suggesting that radio paging may be a public utility, we consider that the appellate court's reliance upon *Radio Relay Corp. v. Illinois Commerce Com.* (1977), 69 Ill. 2d 95, was erroneous. As stated, the issue there was whether a new certificate of public convenience and necessity was required for an existing public utility to operate its own pag-

ing service. It was not necessary because the addition of the service was within the statutory exception.

Here of course we have the entirely different question of whether a company, such as Aircall, which owns no telephone equipment, becomes a telephone public utility simply by operating a radio-paging business. The fact that radio paging is a proper activity for a telephone utility does not mean that a company engaged solely in radio paging is a public utility.

In reaching the judgment that Aircall was not a public utility and was not within the jurisdiction of the Commission, we have considered and given weight to the interpretation the Commission gives to the Public Utility Act. The Commission, in briefs filed in its behalf in the appellate court in this matter, noted that in the past it had given differing interpretations as to whether radio paging was to be considered an activity governed under section 10.3(b) of the Public Utilities Act. At first the Commission considered that Aircall's operation was within its jurisdiction, but upon complete consideration of the question it deemed that this was erroneous, and that radio paging was not within the Commission's authority.

It is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. *Gladstone Realtors v. Village of Bellwood* (1979), 441 U.S. 91, 107, 60 L. Ed. 2d 66, 81, 99 S. Ct. 1601, 1612; *Quern v. Mandley* (1978), 436 U.S. 725, 738, 56 L. Ed. 2d 658, 670, 98 S. Ct. 2068, 2076; see also *Shepherd v. Merit Systems Protection Board* (D.C. Cir. 1981), 652 F.2d 1040, 1043 (An agency's interpretation of its enabling statute and regulations are usually entitled to deference, although agency action that is inconsistent with the statute or regulations must be overturned); *Pan American World Airways, Inc. v. Civil Aeronautics Board* (D.C. Cir. 1968), 392 F.2d 483, 496 ("the general principle

of judicial deference to administrative interpretation applies in full strength where such interpretation involves resolution of jurisdictional questions"); see generally 2 Davis, Administrative Law secs. 7:11 through 7:13 (2d ed. 1979).

A significant reason for this deference is that courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise. See *Transcontinental Bus System, Inc. v. Civil Aeronautics Board* (5th Cir. 1967), 383 F.2d 466, 480, *cert. denied* (1968), 390 U.S. 920, 19 L. Ed. 2d 979, 88 S. Ct. 850; *E.C. Olsen Co. v. State Tax Com.* (1946), 109 Utah 563, 578, 168 P.2d 324, 332; *Overton v. Washington State Economic Assistance Authority* (1981), 96 Wash. 2d 552, 555, 637 P.2d 652, 654; 2 Davis, Administrative Law sec. 7:13 (2d ed. 1979).

This court has recognized that while they are not binding on the court, "interpretations by administrative agencies express an informed source for ascertaining the legislative intent." *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 344-45; see *Johnson v. Marshall Field & Co.* (1974), 57 Ill. 2d 272, 278 (the interpretations of statutes by administrative bodies constitute an informed source for guidance to ascertain the legislature's intention when it enacted the statute); *P.H. Mallen Co. v. Department of Finance* (1939), 372 Ill. 598, 601 (a construction placed on a statute by a departmental agency is entitled to great weight, though a court still retains its authority to construe the statute to the contrary).

This deference to administrative constructions is often applied in the case of factual situations where constructions have been consistently adhered to for a long period of time. (*E.g., Radio Relay Corp. v. Illinois Commerce Com.* (1977), 69 Ill. 2d 95, 101; *Fried v. Danaher* (1970), 46 Ill. 2d 475, 478, *appeal dismissed* (1971), 402 U.S. 902, 28 L. Ed. 2d 643, 91 S. Ct. 1382.) Yet, while lack of consistency

or duration may affect the weight a court will give to an administrative interpretation in a particular case (see, *e.g., Mid-Louisiana Gas Co. v. Federal Energy Regulatory Com.* (5th Cir. 1981), 664 F.2d 530, *cert. granted* (1982), 459 U.S. 820, 74 L. Ed. 2d 56, 103 S. Ct. 49; *Winks v. Board of Education* (1979), 78 Ill. 2d 128), consistency and duration are not requisites for applying the rule (2 Am. Jur. 2d *Administrative Law* sec. 249 (1962); Annot., *Supreme Court's View as to Weight and Effect to be Given, on Subsequent Judicial Construction, to Prior Administrative Construction of Statute*, 39 L. Ed. 2d 942, 953-54 (1975); see generally 2 Davis, Administrative Law secs. 7:13, 7:14 (2d ed. 1979)).

As the court in *City of Richmond v. Drewry-Hughes Co.* (1918), 122 Va. 178, 193, 94 S.E. 989, 992, explained:

> "It is true that the rule of interpretation which permits the courts to look to the practical construction adopted by executive officers is usually applied to cases in which such construction has continued and been acquiesced in for a long period of time; but it is not to be confined to such cases. One reason for the rule is that the officers charged with the duty of carrying new laws into effect are presumed to have familiarized themselves with all the considerations pertinent to the meaning and purpose of the new law, and to have formed an independent, conscientious, and competent expert opinion thereon."

We would add that the Attorney General, at the request of the Commission, issued an opinion on whether a paging service is subject to regulation as a public utility. The opinion was that it was not a public utility and was not subject to regulation by the Commission. 1976 Ill. Att'y Gen. Op. 331.

Because we hold that the Commission lacked jurisdiction, we need not consider the propriety of the first-in-the-field doctrine.

For the reasons given, the judgment of the appellate court is reversed. The cause is remanded to the Commis-

sion with directions to recall the certificate granted Aircall Communications, Inc.

*Reversed and remanded,*
*with directions.*